UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARGARITE RAGAS | CIVIL ACTION |
| VERSUS | NO. 07-1143 |
| STATE FARM FIRE AND CASUALTY COMPANY | SECTION "N"  (1) |

## ORDER AND REASONS

Before the Court are the following three motions: (1) Plaintiff's Motion to Stay Proceedings and Invoke Mandatory Appraisal (Rec. Doc. 24); (2) Defendant's Motion to Strike Plaintiff's Affidavit Filed in Connection With its Supplemental Memorandum in Opposition to Motion to Dismiss and in Support of Motion to Stay proceedings and Invoke Mandatory Appraisal (Rec. Doc. 28); and (3) Defendant's Motion for Summary Judgment on Structural Damages (Rec. Doc. 13).  After reviewing the Complaint, the memoranda of the parties, and the applicable law, the Court rules as set forth herein.

**I.      BACKGROUND**

The home of Plaintiff Marguerite Ragas ("Ragas"), located at 2536 Myrtle Street in New Orleans, Louisiana, was damaged by the high winds and flooding associated with Hurricane Katrina.  After Ragas filed a flood claim, Defendant State Farm Fire and Casualty Company ("State Farm") paid Ragas the limits of her flood policy: $90,000 in dwelling coverage and $15,000 in contents coverage. (Exhibit A to Rec. Doc. 30).  Ragas also filed a claim under her

homeowner's policy, which provided coverage for wind damage, but excluded coverage for flood damage.  In response to Ragas's homeowner's damage claim, State Farm inspected the residence on October 22, 2005 and issued a check to Ragas in the amount of $20,938.82 for wind damages.  (Exhibit A to Rec. Doc. 30).  On March 21, 2006, State Farm reinspected the property and issued a second check for wind damage in the amount of $7,244.61. (*Id.*) Thus, Ragas received, in total, $105,000 for flood damage and $28,183.43 for wind damage to her home.

On March 1, 2007, Ragas filed suit against State Farm claiming that her home was rendered a total loss prior to any flooding.  Ragas demands the limits of her homeowner's policy.  On October 11, 2007, State Farm filed the subject Motion for Summary Judgment on Structural Damages, which was set for hearing on January 2, 2008.  On December 6, 2007, Ragas filed the motion to stay proceedings and invoke the mandatory appraisal process, which State Farm opposes.

## II.    THE MOTIONS

### A.    The Motion to Stay Proceedings and Invoke Mandatory Appraisal (Rec. Doc. 24):

The State Farm homeowner's policy issued to Ragas provides for an appraisal process:

> If you and we fail to agree on the **actual cash value** or, if applicable, replacement cost of your damaged property to settle upon the amount of loss, then either may demand an appraisal of the loss.

(Exhibit B to Rec. Doc. 13, p. 14, *emphasis in original*).  The clause does not set a specific deadline by which the appraisal demand must be invoked.  In November and December of 2007, after State Farm filed its motion for summary judgment, counsel for Ragas attempted to invoke the mandatory appraisal process, which State Farm now opposes.  State Farm specifically argues that there is no dispute as to the amount of the loss based on a statement in Ragas's Complaint

wherein she alleges that her damages equal $103,800.00.  (Complaint, ¶ XXXIX).  State Farm also argues that the Ragas's request to invoke the appraisal process is untimely.

In *Newman v. Lexington Ins. Co.*, 2007 WL 1063578, at *4 (E.D.La. Apr. 4, 2007), Judge Lance Africk reasoned that the appraisal clause must be invoked within a "reasonable time period" after a dispute as to the amount of loss arises, and determined that a demand for appraisal made "approximately two months after plaintiffs' lawsuit was filed" was made within a reasonable time period.  2007 WL 1063578, at *4.  This Court also finds analogous the cases of *W.P. Sevier v. United States Fid. & Guar. Co.*, 497 So.2d 1380 (La.1986) and *Nguyen v. St. Paul Travelers Insurance Company*, 2007 WL 1672504 (E.D. La. June 6, 2007).  In *Sevier*, the Louisiana Supreme Court held that an insurer's failure to demand appraisal within 60 days of receipt of a satisfactory proof of loss rendered the demand untimely. 497 So.2d 1380, 1384.  Similarly, in *Nguyen*, the Court determined that the insurer's request for appraisal was untimely as it was made approximately four months after it received sufficient proof of loss from the plaintiffs. 2007 WL 1672504, *at 4.

Here, the sworn Proof of Loss (attached as Exhibit C to Rec. Doc. 30-2) is undated.  However, the Complaint states that a proof of loss was submitted by Ragas and received by State Farm. (Complaint, ¶ XXII-XXIII).  Thus, this had to have occurred by March 1, 2007, when Ragas filed the Complaint.  Ragas' attempt to invoke the appraisal process approximately *eight* months into this litigation and after State Farm filed its motion for summary judgment is untimely.  Thus, the Court will not stay this proceeding so that Ragas may invoke the appraisal process.

B.    **Defendant's Motion to Strike Plaintiff's Affidavit Filed in Connection With**

>**its Supplemental Memorandum in Opposition to Motion to Dismiss and in Support of Motion to Stay proceedings and Invoke Mandatory Appraisal (Rec. Doc. 28):**

The Court did not consider this affidavit in connection with the motion to stay proceedings as it found the request to invoke the appraisal process untimely. Thus, the motion to strike is denied as moot.

>    **C.    State Farm Fire and Casualty Company's Motion for Summary Judgment on Structural Damages (Rec. Doc. 13):**
>
>       **1.    The Argument of the Parties**

This motion is essentially a motion for *partial* summary judgment. State Farm requests summary judgment in its favor, arguing that Ragas should be precluded from claiming or receiving additional amounts for structural damage under her homeowner's policy (up to the value of that policy) because the total payments received by her for structural damage to her property exceed the total value of the property.

First, State Farm asserts that Ragas is not entitled to a double recovery. Ragas previously was paid and accepted $105,000, representing the limits of her flood policy. State Farm paid her a total of $28,183.43 for wind damage to her property. Thus, combining amounts received for flood and wind damage, Ragas has received a total of $ 133,183.43. Ragas states in her Complaint that the structural damages to her residence due to wind are equivalent to $103,800.00; however, she complains that only $28,183.43 has been paid by State Farm under her homeowner's policy. (Complaint, ¶ XXXIX). The total structural damages alleged by Ragas in the Complaint actually total $112,450, which is $103,800.00 plus $8650.00 for structural damage to "other structures."  (Complaint, ¶¶ XXXIX, XXXXIII). She now seeks the limits of

her homeowner's policy ($90,090 for structural damage and $61,425 for contents).  Thus, State Farm argues that Ragas should not be permitted to recover in this lawsuit for wind damages that she previously attributed to flood damages to successfully obtain payment under her flood policy.  State Farm cites a number of cases from the Eastern District of Louisiana and elsewhere which support this assertion. (See Rec. Doc. 13-2, pp. 5-7).

In opposition to this assertion, Ragas claims that none of the cases which support State Farm's argument are "binding precedent."  None are Fifth Circuit cases.

Second, State Farm asserts that Ragas' homeowner's policy and flood policy provide mutually exclusive coverages such that offset is required because the homeowner's policy does not cover flood insurance.  State Farm cites *In Re Katrina Canal Breaches Consol. Litig.*, 495 F.3d 191 ( 5th Cir. 2007), for the proposition that the flood exclusion in its policy unambiguously precludes recovery for damage caused by flooding that followed  Hurricane Katrina.  Thus, State Farm claims that to the extent Ragas' loss is caused by flooding and was compensated for under her flood policy, that portion of the loss is not covered under the homeowner's policy.  State Farm claims that the payments made to Ragas under her flood policy reduce the amount of the losses that may be found to be covered under the homeowner's policy.

In opposition, Ragas claims that there is no contractual or statutory basis for State Farm's alleged entitlement to an offset, and, thus, it is a creature of equity.  Ragas notes that the homeowner's policy makes no mention of a flood insurance offset. She claims the plain, unambiguous language of the policy makes clear that, in the event of a covered loss, the insurer must reimburse her as set forth in the policy. Without an ambiguous provision in the policy, Ragas claims that this Court cannot proceed to equitable analysis on the offset issue.

However, in the event the Court would find an ambiguous provision which would allow it to proceed to equitable analysis, Ragas asserts that it would have to be construed against State Farm as the insurer.  Ragas argues it would lead to absurd consequences to assert that an insured would pay premiums on flood insurance for years with the "reasonable" expectation that payments for claims made under that policy could then be surrendered to a third party.  She notes that State Farm could have included a provision in the policy that excluded payments by applying a flood offset; however, it did not do so.  She claims that because the homeowner's policy is silent as to flood insurance payment, she reasonably expected that her flood benefits would not affect her recovery under the homeowner's policy.  Ragas claims that the law of Louisiana is clear that where there is no mention of offset, offset cannot be produced, inferred, or created. She argues that because deriving a flood insurance offset from a homeowner's policy results in absurd consequences that contradict the reasonable expectations of the parties, such an interpretation should be rejected in Louisiana.

Next, Ragas claims that State Farm's arguments in support of an offset along with the "non-controlling" case precedent cited by State Farm, miss the mark when defining the nature of the insurance proceeds State Farm is contractually obligated to pay Ragas.  Ragas claims that State Farm's mistaken definition implies that insurance law is based on the principle of indemnification and is aimed at reimbursement, and the benefit derived from insurance should be no greater in value than the loss. Ragas claims this is a "gross oversimplification" and is "patently inaccurate." (See Rec. Doc. 14, p. 8).

Last, State Farm claims that Louisiana's Valued Policy Law, La. R.S. § 22:695, does not apply in this situation and should not be interpreted to permit Ragas to obtain a double recovery

of insurance proceeds. Ragas seeks to recover the full value of the homeowner's policy under the Valued Policy Law, despite her prior claim for and receipt for $90,000 in flood damages. State Farm argues that, according to the statutory language of that law, it requires compensation only for "covered" losses caused by covered perils. Essentially, State Farm claims that Ragas' claims for flood insurance benefits and her acceptance of those flood insurance payments constitute an admission that a large portion of her total loss resulted from a non-covered peril. Thus, State Farm claims the Valued Policy Law does not apply to non-covered losses. However, State farm contends that even if the Valued Policy Law is found to apply, it should not be interpreted to allow double recoveries for the same loss under homeowner's and flood policies. State Farm argues it is well established in insurance law that an insured may recover only once for a given loss.

In opposition, Ragas notes that State Farm fails to mention *Landry v. Louisiana Citizens Property Insurance Company*, 2007-247 (La. App. 3 Cir. 8/28/07), 964 So.2d 463 , wherein she asserts that the state court determined that Valued Policy Law does apply when wind was an "efficient proximate cause" of the total loss of the structure. Ragas claims that *Landry* court also concluded that the insurer has the burden of proving the affirmative defense that wind was not an efficient proximate cause of the total loss of the structure. Citing the *Landry* case, Ragas essentially contends that the Valued Policy Law issue is not ripe for summary judgment because the issue of whether wind was an efficient proximate cause of Ragas' total loss is a contested issue of fact and law.

State Farm counters that Ragas should be estopped from arguing that her property was rendered a total loss prior to flooding because she claimed and accepted $90,000 in flood

insurance benefits. State Farm claims that compensation under the flood policy is limited to the uncompensated damage to the property, which equals the difference between the value of her home and the amounts paid under the flood policy. Thus, using the valuation of Ragas' damages from her Complaint, the uncompensated amount is $22,450, which is reached by subtracting $90,000 from $112, 450). Because State Farm has already paid Ragas $28,183,43, no further compensation is owed. Allowing Ragas to recover more would allow her double recovery of insurance proceeds.

In opposition, Ragas asserts that the doctrine of equitable estoppel generally applies where one party attempts to contradict its own sworn statements from prior litigation. Despite acknowledging this as a "general" application of the doctrine, Ragas goes on to argue that equating her flood claim with an inconsistent prior sworn statement fails.

### 2. Law and Analysis

#### a. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

Initially, the movant bears the burden of demonstrating the absence of material fact

issues. *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir.1993). The movant is not required, however, to negate the elements of the nonmovant's case. *Little v.. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*citing Celotex*, 477 U.S. at 323). If the movant meets his burden, then the burden then shifts to the nonmovant, who, to avoid summary judgment, must go beyond the pleadings and designate specific facts that show that there is a genuine issue for trial. *Id.* (*citing Celotex*, 477 U.S. at 325). Of course, unsubstantiated assertions do not constitute competent summary judgment evidence. *Abbott*, 2 F.3d at 619 (*citing Celotex Corp.*, 477 U.S. at 324).

Before granting a motion for summary judgment, the district court must be satisfied that no reasonable trier of fact could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 249; *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (stating that "the facts and inferences [must] point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict"). In determining whether a material issue of fact exists, the evidence and all inferences drawn therefrom must be considered in the light most favorable to the non-moving party. *Baker v. American Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir.2005) (*quoting Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir.2005)).

**b.    Analysis**

This Court finds the facts of the *Esposito* case the most analogous to the instant case.[1] In *Esposito*, the plaintiff's property incurred both wind and flood damage as a result of Hurricane Katrina. The plaintiff applied for flood insurance benefits and received $211,565.00. The

---

[1] Ragas makes a point in her opposition of arguing that this opinion and other opinions from cases in the Eastern District of Louisiana are not "binding precedent" on this Court. While that is true, the Court finds them quite persuasive.

plaintiff also made a claim under his homeowner's policy for wind damage to his home and to the contents on the second floor of his two-story home. He was paid $36,892.54 for contents damage under the homeowner's policy. However, the plaintiff sued his homeowner's insurer, arguing that wind caused a total loss of the property and seeking the full policy limits on his homeowner's policy.  Seeking summary judgment, the insurer asserted two main arguments.  First, the insurer claimed that the plaintiff should be estopped from arguing that winds caused his losses after accepting flood insurance proceeds for those same losses.  Second, the insurer asserted that any recovery by the plaintiff in this lawsuit should be offset by what he had already been paid under his flood policy because his recovery should be limited to the actual cash value of his loss.

      Citing *Weiss v. Allstate Insurance Co.*, 2006 WL 891869 (E.D. La. Mar. 21, 2007), Judge Jay Zainey granted the insurer's motion for summary judgment, reasoning that "a plaintiff whose property sustains damage from flood and from wind can clearly recover for his segregable wind and flood damages except to the extent that he seeks to recover twice for the same loss." *Esposito*, 2007 WL 1125761, at*2.  The Court determined that the plaintiff was entitled to recover "any previously uncompensated losses that are covered by his homeowner's policy and which when combined with his flood proceeds do not exceed the value of his property."  *Id.*

      Just as the *Esposito* Court determined, this Court concludes that Ragas is not entitled to obtain a windfall double recovery by now re-characterizing as wind damage those losses for which she has already been compensated by previously attributing them to flood waters.  Flood insurance benefits were not mistakenly made to Ragas for the flood damage to her home.  Ragas successfully sought and obtained those flood payments.  This Court will not permit her to retain

those funds while seeking damages under her homeowner's policy for the very same losses for which she has already been compensated under her flood policy. While the Court recognizes that

it is fairly common, especially in Katrina-related cases, for a plaintiff to have both wind *and* flood damages, and coverages for both, this does not entitle the plaintiff to double recovery in the event of a given loss. Ragas's flood policy was meant to compensate her for her flood damages, and in this case, her homeowner's policy was meant to compensate her for her wind damages (flood damages are specifically excluded in this policy).

Thus, the Court grants State Farm's motion and finds that Ragas should be precluded from claiming and/or receiving additional amounts for structural damage under her homeowner's policy. According to Ragas' Complaint, the total structural damages to her property amount to $112,450 (which is $103,800.00 plus $8650.00 for structural damage to "other structures"). The amount already paid to her for structural damages, $118,183.43 (which is $90,000 for flood damage and $28,183.43 for wind damage) *exceeds the amount of her structural damages*, as alleged in her Complaint. Insurance contracts are contracts of indemnity, which are meant to place insureds in the same positions they were in before the damage was sustained. *See Wright v. Assurance Co. of America*, 31,578, p.3 (La. App. 2 Cir. 2/24/99), 728 So.2d 974, 975. On the other hand, insurance contracts are not meant to place insureds in better positions than they were in when the damage to their properties was sustained. In this case, permitting Ragas to recover additional monies for structural damages would result in this absurd consequence.

As for Ragas' assertions regarding the Valued Policy Law, this Court notes that this law

only applies to "covered" losses. Flood damage is specifically excluded by Ragas' homeowner's policy. This Court refuses to interpret the Valued Policy Law in such as a way as to permit double recoveries for the same loss under homeowner's and flood policies.

### III.   Conclusion

Considering the foregoing,

**IT IS ORDERED** that the **Motion to Stay Proceedings and Invoke Mandatory Appraisal (Rec. Doc. 24)** is **DENIED.**

**IT IS FURTHER ORDERED** that **Defendant's Motion to Strike Plaintiff's Affidavit Filed in Connection With its Supplemental Memorandum in Opposition to Motion to Dismiss and in Support of Motion to Stay proceedings and Invoke Mandatory Appraisal (Rec. Doc. 28)** is **DENIED as moot.**

**IT IS FINALLY ORDERED** that **State Farm Fire and Casualty Company's Motion for Summary Judgment on Structural Damages (Rec. Doc. 13)** is **GRANTED.** Even though it is not characterized as such, this is essentially a motion for *partial* summary judgment, which only affects Ragas' claim for structural damage to her property.

New Orleans, Louisiana, this 11th day of February, 2008.

                                      **KURT D. ENGELHARDT**
                                      **UNITED STATES DISTRICT JUDGE**